We've had the same internal debate. Okay, Artin v. Goings. All right, Ms. O'Brien. Thank you, Your Honor. Good morning. May it please the Court. Angela O'Brien, Assistant Attorney General, on behalf of Defendant's Appellants Sergeant Robert Goings, Sergeant Lance Wallace, and Lieutenant Jonathan Stringer. We are asking the Court to reverse the District Court's denial of the officer's motion for summary judgment. This Court should grant the motion finding that Artin's excessive force claims against them are HEC barred and that the officers are entitled to qualified immunity. Further, this Court should remain with instructions for Artin's excessive force claims to be dismissed with prejudice to their being asserted again until the HEC conditions are met. Artin's claims should be dismissed because he claims he was attacked without any provocation and did nothing wrong during his encounters with correctional officers, which directly challenges the factual determinations that underline his prison disciplinary convictions for defiance and aggravated disobedience. He sort of argued, separate and apart from the offenses which gave rise to the disciplinary, that he was beaten, which his argument is that none of that is intertwined with the complaints themselves. So how do we unpack his excessive violence? In other words, he says, even if I did what you say I did, you still didn't have a right to beat me. Okay, so his claim here is not that, well, Oakwood is instructive here. Part of Oakwood is instructive here because in Oakwood, the Court found that part of plaintiff's claims were HEC barred before he was restrained. And they were HEC barred because plaintiff claimed he was wholly blameless for the encounter that took place with correctional officers. And this is also what's happening here. It's not that he's claiming, he's claimed all along since the beginning of his initial administrative remedy procedure that he was just attacked for no reason in both of these encounters didn't do anything wrong. And that this isn't a claim that the inmate is claiming that he was resisting, but the force that was used outweighs what his resistance was. His claim is that he never resisted. And if we look, if your Court would like, I can look at each of the disciplinary convictions that he was found guilty of and apply how it applies to the facts of what happened here during each encounter. So this case turns, Matt, he's claiming actual innocence on all the complaints, is that right? Correct, Your Honor. So is it, before you get into that, is there any relief that he would be entitled to if he were successful other than a reversal of the sanction that he received for the conduct as the administrative tribunal? I want to make sure I understand your question correctly. If he had appealed just his disciplinary conviction, he could have done that through a procedure, taken an appeal to the 19th JDC and contested his disciplinary conviction. And he didn't do that. He filed this 1983 lawsuit claiming that officers beat him during both incidents for no reason. But the Heck argument would preclude, if we were to agree with you, it would preclude not only him getting relief, in other words, a reversal of the punishment that's been imposed, but is he also seeking financial damages as well? Correct. He's seeking monetary relief, Your Honor. He's actually not seeking that his conviction be overturned in this lawsuit. Okay. He's strictly seeking monetary damages. By claiming that he was completely faultless and did not commit the acts as found? Correct. Correct. Just that officers beat him without provocation. So the first incident that occurred here occurred in the lieutenant's office. Mr. Auten claims that, well, he was brought into the disciplinary report controls here. And what's important about the disciplinary report is that it covers the entirety of the incident. And all the officers in this, in the lieutenant's office, Sergeant Goings and Lieutenant Stringer are the officers that Auten has his claims against. And the disciplinary report covers the entirety of the incident. It's not like Oakland where there was a temporal break where Mr. Oakland was restrained and then he had claims after he was restrained. That's not this. So the disciplinary, and he was found guilty also to, you know, here he was found guilty of contraband defiance and aggravated disobedience in the first incident and lost 30 days of good time in addition to a transfer to extended lockdown and restitution. You know, if he had only been given restitution, we wouldn't be here because, you know, we're here because he lost good time for both of these. Aren't we here for the 1983 damages claim? Yes, your honor. And what I meant is we wouldn't be able to argue heck if he hadn't lost good time. So, but he's here only for 1983 damages. So heck bars it unless the prior conviction is reversed on direct appeal or expunged or declared invalid. And none of that happened here. Correct. None of the habeas. Correct. He did not pursue any of the measures that he could have to have this overturned. And so it still stands today for both of the incidents. Okay. Even if he, he doesn't hear because he's claiming actual innocence, but even if he said, yes, I did all of that, but still didn't have a right under 1983 to beat me. So is this claim of absolute, absolute, complete innocence from the disciplinary charges? What makes the matter so inextricably bound with heck? Yes, your honor that. And then I also think to what happened here and how it is detailed in the disciplinary report. And, you know, it shows what happened during this incident and that there's no break because I know in some of the cases that have recently come before this court, um, you know, there have been breaks and, and the, um, offenders were not written up separately for the, um, incidents that occurred, but that's not what occurred here. You know, these two incidents happen. He was written up separately for both of them and lost good time for both of them. 30 days for the first incident and 120 days for the second incident. I think following the briefing, we had two cases, Santos and Greg, which came down somewhat similar. Uh, do those help you or do they alter the circumstance at all? I believe. And if you could just give me one minute, your honor, because I, in my head there, since they're similar, I believe in Santos, um, is helpful because in Santos, he was found guilty of nine rule violations, including similar ones here, defiance and aggravated disobedience. Um, but in Santos and, um, Greg, I believe part of the issue was we didn't, there was in the record, there wasn't the, um, the definitions of defiance and aggravated disobedience. Um, so the record was not complete. Whereas here we have a complete record where we have, um, the definitions of the rule violations and we also have, um, you know, an application to what happened here. Well, the district court was aware of HEC and tried to kind of parse through the way that these claims ensued, but found as to the one it to be segregable, you know, and not HEC barred. So, I mean, the court was aware of HEC and otherwise rule HEC barred, but on the one particular claim, either temporarily or otherwise found that it could be segregated, you know, from the other claims or said differently, that relief for him didn't inescapably result in reversing the disciplinary action. Correct, your honor. And that's where we disagree, um, with the district court because he, he, it was, he like broke up the incident where there wasn't a break in the incident. Um, in particular, if we look at the first one, so Otten is brought to the lieutenant's office because he's alleged to have contraband. Um, when they, um, and, and in the office at first, it's just Otten and, um, Sergeant Robert Goings. Um, he asked him to, you know, hand over the contraband. I believe, uh, Otten did hand over something, but then some, another, some other, uh, object falls and that's kind of where it starts, where they start, um, tussling over the art, the object, Otten hits Sergeant Goings, they fall to the ground, Sergeant Goings is trying to, uh, request backup. Uh, he can't because they're tussling, they fall to the ground, he's able to call for backup. Um, at this point, Otten is still actively resisting and also trying to swallow the unknown object. Um, officers, uh, that's when I believe Sergeant, um, or Lieutenant Stringer arrives and, uh, Sergeant Goings says he's, he's, you know, he sees that he's trying to, uh, swallow the unknown object. So, Lieutenant Stringer, um, at that point, I think he had already swallowed the object, but Lieutenant Stringer is able to, I think, gain control of his left hand, um, and then after that, the rest of the officers arrive, they're able to, um, subdue him to the, where they're able to get him in cuffs, and then the incident ends. And he's written up for aggravated disobedience and, um, uh, well, contraband and defiance, but defiance and the aggravated disobedience are most important here because if he had just been convicted of contraband and lost good time, we couldn't, the heck argument really wouldn't, we wouldn't be able to go forward with that. But defiance says, um, you know, no offenders shall commit or threaten physically or verbally to commit bodily harm upon another person. Um, and then the other pertinent part is that no offender shall obstruct, resist, distract, or attempt to elude staff in the performance of their duties. And then, um, aggravated disobedience, offenders must obey direct verbal orders cooperatively and that's directly what happened here, that heck bars Otten from now saying that, you know, uh, he, he didn't resist and didn't do anything wrong. So that is why, um, heck is applicable here. So then that incident ends and he is transported to medical to get checked out and also they want to run a body scan on him since he had swallowed that unknown object. Um. Well, Gray, Gray leaves no doubt that it applies to this type of disciplinary hearing and loss of good time, does it? Correct, Your Honor. Um, I believe, uh, Gray and Santos, yes, definitely for, foreclose any debate that heck does not apply in these type of situations, um, where disciplinary, uh, convictions in the prison context result in the loss of good time. Um, what's important is that, you know, there's no allegation that anything happened when he was transported to medical and while he was at medical. Um, he specifically says in his testimony, there's nothing in the complaint and then he specifically says that, um, you know, in his testimony, deposition testimony. So after you left the lieutenant's office all the way to Dr. Cleveland, did they attack you anymore? No. Um, so then he is now, uh, after he finishes getting checked out by medical and gets the scan, he is going to be taken, escorted to, um, the dry tank because he's got to be monitored since he, um, swallowed this unknown object. Um, so they're on the sunwalk unit and this incident involves Sergeant Wallace and Lieutenant Stringer. So, um, they, they're, and once again on this incident, he pleads guilty to defiance or no, he's found guilty of defiance and aggravated disobedience. Um, so he's, while they're getting ready to, uh, starting to transport him, um, Auten grabs Lieutenant Stringer's, um, hand and tried to ram his shoulder, uh, into his body, you know, once again, trying to resist. Um, so Lieutenant Stringer is able to bring him to the ground. He's telling him to start resisting, but he's continuing to resist throughout this encounter. So other, um, he's kicking, he's being aggressive. So other officers, um, arrived to help including, um, Sergeant Wallace. Um, Sergeant Wallace is able to secure Auten's upper torso. Um, and at that point he's, you know, he, he ceases resisting. Um, the, as I discussed earlier, you know, the definitions for defiance and disobedience, those definitions directly apply to the conduct that Auten, um, exhibited and was found guilty of. All right. Thank you, Ms. O'Brien. You've reserved your rebuttal time. Yes. Thank you. All right, Ms. Cronin. Good morning, Your Honors. I'd first like to point out that you just heard 10 or 15 minutes of argument on facts. Now, one of the complaints that we've made is that these reports that are uncertified, unsworn, unsigned, or hearsay. Now, I understand in the past, the court has said, well, they're just there to show that he received a loss of good time. But what it doesn't show is for what conduct he received a loss of good time. Let's, let's start at first principles. Do you acknowledge that through Hecht, Santos, Gray, that the Hecht Bar does apply to disciplinary proceedings? No, I don't. Categorically, and I go back to Muhammad, and I want to go back to Clark, and I know Judge Wehmer, I think you, Judge Stewart, were on the panel for Clark, but . . . Well, Santos and Gray are the most recent pronouncements from our court, and then there are other cases that similarly hold that disciplinary proceedings like convictions. So, let's just say, I know you want to argue fact, but what's the best case, controlling case you have that the Hecht Bar doesn't apply to disciplinary proceedings here? Because . . . I have the Supreme Court case. I have the Muhammad case. And the Muhammad case, there was a split in the . . . Muhammad before Hecht or after? Muhammad comes after Hecht, and it addresses Hecht, and it's a United States Supreme Court case, and . . . What's the cut line? Not applicable here. Muhammad is not applicable here. Well, it's a Supreme Court case that says that these . . . Hecht does not apply categorically to all disciplinary proceedings, and it goes through the Edwards versus Balsakoff line of cases and says that Hecht Bar applies where there is a challenge to the procedural nature of the disciplinary procedures. For example, let's go back to Clark, where in the dicta of Clark . . . Oh, okay. Let's come back to square one. Number one, Mr. Otten is claiming actual innocence, right? I didn't do it. He's claiming after . . . He is saying they continued to beat me after I was restrained. No, no, no, no, no. Mr. Otten is. He is claiming actual innocence. In other words, he's not arguing, okay, I had the drugs and all of that, but there was no right for me to be beaten. Therefore, I have a claim under Section 1983. Here, he's claiming actual innocence, and in the petition, he's not asking for reinstatement, is he not? There is no reinstatement. A favorable decision on the merits, it's not like he's challenging the disciplinary proceedings and saying they were unconstitutional, there was a denial of due process. So if you set aside this disciplinary proceeding, I get a return of good time credits. The outcome of this 1983 case will in no manner affect or return good time credits. This purported disciplinary report, uncertified, unsigned, does not say you lost good time credits for a Rule 3 violation. It doesn't say you lost good time credits for a Rule 5 violation for this fact and that fact. We don't even have the audiotapes. I mean, this is all argument that is being made as facts off of inadmissible hearsay, which you can't even consider this evidence. The principal issue here at the state appeals is to say the claims are heck barred because they're inextricably tied to the underlying disciplinary convictions. So I mean, they're making a legal argument, not a challenge, based on the facts that they're claiming are established by this disciplinary report. So if we back up, his testimony was he's in the wind unit. There's videos all over the wind unit. He's escorted from his bunk, through the wind unit, through the TV room, into the lobby, into the lieutenant's office, where there's this scuffle for them choking him and trying to get allegedly something out of his mouth. He says, after I was restrained, they continued to beat, stomp, and kick me. Now there's nothing about that in this disciplinary report, which the court is accepting the facts of this, which is hearsay, as evidence of factual evidence. This court is taking these inadmissible reports and saying, well, that's facts against him, when this is not evidence in federal court. And so he then says, when they got me on the walk, they took me down, and even one of the other officers says that there was a situation where they took him to the ground and again beat him. There's nothing in these disciplinary reports that accounts for that. There's nothing in these disciplinary reports that account for his injuries. There's nothing in these disciplinary reports that say, well, he was bleeding and beat up because we choked him. How does that, you know, make his face all bloody? His nose was bleeding because we had him down on the ground and restrained him? You know, so in this case, the court seems to be focusing on these disciplinary reports as a basis for its facts. And these reports are not in proper form, and they do not say what the hearing officers considered or what their findings of fact were as to Rule 1, Rule 3, Rule 5. Moreover, if you look at these, you could speculate that there was an enhancement, and he may have gotten a loss of good time credits due to some sort of enhancement, and not because of a contraband violation, which has nothing to do with the excessive force. Rule 3 is talking back. Rule 5 is the only possible aggravated charge here. And you don't know what they're claiming is facts that support any of those charges. All you know is that there's a piece of paper, two pieces of paper, floating out there, unsigned, uncertified, that the state is asking this court to accept as facts and to say, this is the disciplinary hearing board did this. The disciplinary hearing board did that. Do these reports say that? No, they don't. They don't say what the disciplinary board did. They don't say what they considered. And if you look at Santos, which is Santos and Gray, in the Gray case and the Oten case, I mean the Lane case as well, the courts have said, you know, you can't categorically apply heck, even though this court is like going pre-Muhammad, where Muhammad, there was a conflict in the circuits is why they took Muhammad up, because some of the circuits were doing like this circuit is now, since the disciplinary proceedings. So that is why that split in the circuit is why the Supreme Court accepted certification on the Muhammad case. Now, when the Clark case came down, that was a case that followed the Edwards versus Balsakoff line of cases, where there was a challenge to the actual due process of the disciplinary proceedings. So if I got a Rule 3 violation, and I went in and said, Rule 3 is unconstitutional, and I had lost good time credits for the violation of Rule 3, and I said it's unconstitutional, and Judge Weimer agreed with me and says, yes, it's unconstitutional, I would get my good time credits back. And that's what happened in the Stalver and Balsakoff line of cases. In the Born case, which came about around 2019, Judge Smith wrote that, I'm not trying to be mean or criticize anybody, but the Clark case was inappropriately applied to the garden variety disciplinary matter, which the Supreme Court, Muhammad settled the split in the circuits and said, we're not going to do that. So I'd just like for this Court to look at the fact that the district court said, material issues of fact preclude these summary judgments. So there's not really a question as to that, and one can see why this can't be taken as facts as what anybody else did, other than what somebody typed on possibly a certain day. It's not even certified. So I'd ask this Court to look at those issues and to look at the Muhammad case, which we've cited, which resolved the split in the circuits, and at the time, when they resolved the split in the circuits, this Court was on the side that said they do not categorically apply to disciplinary proceedings, and there was a decision by Judge Poliz on that. But Santos and Gray do not categorically apply HEC to disciplinary proceedings. As a matter of fact, in Santos, the panel said not all of the charges against the defendant were, they could be segregable, and for those that weren't intertwined, it separated out and says this claim can go forward. It's the ones that were tied to the conviction, and so there was no categorical application of HEC. So tell us how. I know you're arguing facts, but tell us how your client's claims are segregable from the underlying conviction so that the HEC bar doesn't apply. Can I touch on something very interesting about the Santos case? You know, in Santos . . . Well, it would help if you respond to my question. He was, okay, Judge, but Santos was charged criminally for the same things that they wrote him up for, and he was found criminally. They dismissed those charges. Moreover, his ultimate conviction was reversed. But I'm not arguing that. Notwithstanding, the Court there said when you stopped, when you were put in restraints, what happened to you after you were put in restraints and they continued to beat you after you were in restraints is not covered by the HEC bar, and they've done that, and this Court has done that in the Lane-Oquan case, in the Gray case, in the Santos case, and all these cases, the Courts have said we're going to remand this case. I'm going to try one more time. Okay, Judge. All right. In Santos and in other cases, your argument was that the Court errs by applying categorically HEC to all disciplinary proceedings. I start off asking you, do you agree that disciplinary proceedings are covered under HEC? You said no. All right. In Santos, the claims were segregated. The Court says here are claims that are intertwined with the convictions HEC bar, but here are claims in the proceedings that are not. Therefore, they're not HEC bar. What I'm asking you, what's the best argument you can make here that there are claims that are segregable? Because here there were two proceedings which facially seem to cover all of the claims below. That's what I'm asking, if you can. Even if you accept the facts in these disciplinary reports as true, Mr. Oten testified under oath in a deposition, which is facts, which is admissible evidence, that after he was restrained, they continued to beat him. There's nothing in these reports that say, after he was restrained in the Lieutenant's office, we continued to beat him. There's nothing that says, when he was on the walk, we threw him down and had to kick and jump on him. There's nothing about that in here. If HEC can be categorically applied to prison disciplinary proceedings that do not result in a loss of good time on a 1983 case, which I disagree with, then there's your facts, Judge. Well, there was a loss of good time here. It's not going to be restored through the 1983 action, as it would if he had he challenged the due process nature of the disciplinary proceeding. If we go before a jury and they find in favor of my client and give him $10, he doesn't get his good time back. Moreover, from these disciplinary reports, we don't know what they attributed the loss of good time to, what facts, what charges, it's not in these reports. We understand your factual argument concerning what transpired, but as you know, we don't determine the facts. The difficulty for the panel is we've got HEC from the Supreme Court, and we've got panels, and we've got law that says disciplinary. HEC originally said convictions. The later cases say disciplinary proceedings. We're not making a factual determination. We are trying to discern whether or not and to what extent the HEC bar applies here, notwithstanding any judgment on our part about the facts and that kind of thing. That's why we set it for an argument. Your brief did not address Santos or Gray or any of the later cases, and so that's why we start off asking. Judge, the state, I don't think they can have it both ways. They can't say, accept all of our facts as true, and then say there's no factual dispute. And if they're going to ask the court to accept all of their facts as true, I would think we have to at least at a minimum have admissible evidence on the facts. And these reports that they've turned in in this case, the district court said material issues of fact preclude summary judgment. So he, this case is now before this court, and this court is trying, is weighing facts. And it would appear from the court's precedents that the court under this type of collateral appeal would only be reviewing an issue of law, not fact. Well, let me put it to you like this. Even if we agree with you, a prior panel, Santos involved a section 1983 claim, just like here. Correct. Disciplinary proceedings, just like here. And the court held that those claims were heck barred because they were inextricably tied to the underlying proceedings, based on, and held that the claims were barred. This panel can't overrule that, so how is, because only some of the claims, just like this court found, the district court in this case found some of the claims, not all of the claims. That's the same with the Lane-Oakland case, the Gray case, and Santos. Santos was remanded. Those cases were all remanded back to the district court. Two settled, one was tried. So that's basically what the district court did in this case. It found some, not all. Judge Stewart, I'm just passionate on this issue. As you know, I've been before you before on these very issues, and I appreciate the court's indulgence in these legal arguments. It's exciting for me to discuss these precedents because I do a lot in that. That's why we set the case for argument. As you know, we're not making fact determinations. It's what the court held in the binding law. And here, as said, we set it for argument to help us understand. Yes, in Santos, there were some claims that were deemed not to be subsumed. And what I asked you was, help us understand which of the claims in this case might fit into the carve-out that Santos allows. But that was what I asked. And so instead, you're saying there was some categorical application, and that's not what's here. No, my answer is, once he was restrained, the force that continued after he was restrained, and the force on the walk. Those are my answers, Your Honor. And those are the same claims that the district court found survived Heck. Okay. Thank you, Your Honors. We appreciate it. Thank you much. All right. Ms. O'Brien, you're reserved for rebuttal. Thank you, Your Honors. Ms. Broadness says we're not reading Muhammad. Yes. As we've already discussed this morning, Santos and Gray were recently before this court, and the arguments as to relating whether Heck applies, I mean, Heck applies here. There's a disciplinary conviction. He lost good time. Also, too, in support of the motion for summary judgment, the disciplinary reports that were certified were not the only evidence submitted. There were also declarations from all the officers named as defendants in this matter detailing what happened in their encounters with Auten. The Heck bar changes the analysis. Because we're arguing Heck is why we're looking to these disciplinary reports. And at the end of the day, Auten's claims that he didn't do anything wrong during both of these encounters and offered no resistance is directly inconsistent with his convictions for defiance and aggravated disobedience. In order for a jury to take what Auten says is true would negate those disciplinary convictions. And so that is why we are here, is because the Heck bar clearly applies in this case. Counsel, since we spent a lot of time with your opponent discussing what she brought up, Muhammad, can you give us sort of the nutshell, the distinction between the cases, that case and this one? I apologize, Your Honor. I'm not as clear on Muhammad because I concentrated on the fact that in Santos and Gray, this Court clearly said that, you know, and it's not just in those cases. There's plenty of cases in this circuit. I hear you. In fact, I went back to check to see if the district court had made mention of Muhammad. I think in the original order it did. And that's why I raised it. And I will say, too, that the district court, you know, he agreed that, you know, Heck applies to these type of cases where there's disciplinary convictions in the prisons that result in a loss of good time. Well, somewhat like the other line of question, the district court felt that the one claim, or at least some of it, was segregable, like in Santos, right? Yes, Your Honor. With all due respect to the lower court, his amended ruling is confusing because he's talking about Lieutenant Stringer and he says that, you know, that once he was restrained, you know, that before that it's Heck bar but after. But in both of these, like, something was read into the record that's not there. These disciplinary reports make clear that, like in the first incident, he's, you know, combative and arguing the whole time and then, you know, forcibly, you know, hitting officers and verbally resisting. And same thing with the second incident. There is, like I mentioned earlier, there is no break here that you could see in Oakland where there was a break and, you know, the incident stopping and, you know, he's restrained and that's it. That's not these two incidents. There are continuous incidents that are covered by the disciplinary reports and his convictions, you know, that's the most important thing. The defiance and the aggravated disobedience cover, you know, what happened during both of these incidents. There is no break where he's throughout any of these encounters and he, you know, was just beat without provocation. And like I mentioned earlier, you know, if there wasn't a write-up for both of these incidents, this analysis would be different. But, you know, each incident, there was write-ups for, you know, violations that directly go to Auten's noncompliance with orders and directly go to, you know, the excessive force claims that he's brought in this lawsuit. All right. All right. Thank you, Ms. O'Brien. Thank you, Ms. Grodin. We appreciate the briefing and argument in the case. We'll sort it out. Thank you, Your Honor. Appreciate it. All right.